**CONTINENTAL AIR LINES, INC., Plaintiff,**

v.

**GROUP SYSTEMS INTERNATIONAL FAR EAST, LTD., et al., Defendants.**

**No. CV 85–4904 AWT.**

United States District Court, C.D. California.

Feb. 18, 1986.

William T. Bisset, Hughes, Hubbard & Reed, Los Angeles, Cal., for plaintiff.

George Baltaxe, Baltaxe, Rutkin & Levin, Beverly Hills, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

Before the Court is the request of plaintiff for sanctions under F.R.Civ.P. 11, made in conjunction with its opposition to defendant's motion to dismiss under F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. The motion to dismiss was denied and ruling on the request for sanctions was reserved, pending further briefing by the parties. That briefing has now been completed. For the reasons discussed below, the request for sanctions is granted in part and denied in part.

## I. BACKGROUND SUMMARY

Defendant's motion to dismiss for lack of jurisdiction over the person was filed on September 24, 1985. The memorandum in support of the motion does not mention *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), although the case was decided by the Supreme Court on May 20, 1985, four months before the motion was filed and, by the motion's filing date, had to be considered as *the* leading case on personal jurisdiction in the context of the motion in the case at bench. After receipt of the moving papers, on October 25, 1985, plaintiff's counsel wrote to defendant's counsel, enclosing a copy of the *Burger King* opinion and offering the opinion that even on the basis of "pre-discovery" review of documents, it was "very clear that your motion is not well taken." That letter also notified defendant that plaintiff would seek Rule 11 sanctions and asked defendant to consider withdrawal of the motion before plaintiff was forced to incur substantial, unnecessary expense in defending against the mo-

tion. The motion was not withdrawn; plaintiff prevailed. The motion was continued for two and one-half months from its original hearing date and, in the interim, plaintiff conducted substantial discovery on the jurisdictional issue. The factual picture presented by plaintiff's opposition was much more complete than that presented in the moving papers. It was plaintiff's marshalling of the facts which was determinative of the outcome of the motion. Whether gathered during discovery or known to plaintiff prior to the initiation of discovery, it is a fair statement that all of the relevant facts should have been known to defendant's counsel if reasonable inquiry had been made, since they consist of defendant's own documents and the testimony of one of defendant's directors.

## II. BASES FOR SANCTIONS REQUEST

The request for sanctions is predicated on four different bases: (1) Failure to make sufficient legal inquiry in that counsel was unaware of *Burger King;* (2) Failure to make sufficient factual inquiry of facts which were determinative of the motion; (3) Breach of the "duty of candor" imposed by Rule 11 for failure to call the "critical" facts to the Court's attention; and (4) Persisting in the motion after its "defects" were called to counsel's attention.

## III. DISCUSSION

It is important to acknowledge at the outset what Rule 11 was *not* intended to accomplish:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors

as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

F.R.Civ.P. 11, Advisory Committee Notes (1983). The rule does require "some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances." *Id.* (citations omitted). That standard of "reasonableness" is an objective one and subjective bad faith does not enter into it. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829 (9th Cir.1986).

### A. The Duty of Inquiry.

■ Under Rule 11, an attorney's signature to a motion "constitutes a certificate by him that he has read the ... motion ...; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law...." The issue of what inquiry is reasonable is determined by this Circuit's formulation of the applicable rule:

> Rule 11 sanctions should be assessed if the paper filed in district court and signed by an attorney ... is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.

*Zaldivar,* at 830–31 (footnote omitted).[1] As both the text of Rule 11 and *Zaldivar* expressly state, the rule applies to both questions of law and of fact. Plaintiff contends that defendant failed to comply with both requirements.

■ 1. *Legal Inquiry.* Counsel acknowledges that he should have cited *Burger King,* that it was an important case on one of the issues raised by his motion. He pleads ignorance and neglect—that

---

1. In fairness to plaintiff's counsel, it should be noted that *Zaldivar,* which established the law of the Circuit, was not decided until after the request for sanctions was made.

since *Burger King* did not expressly overrule any Ninth Circuit case, his Shepardizing of Ninth Circuit authority did not disclose the existence of the case. By any objective standard, the duty of reasonable inquiry on an issue of constitutional law (here, the due process limits of the exertion of personal jurisdiction) must include, at the least, inquiry to ascertain whether or not and when the United States Supreme Court has ruled on the issue. Here, the Supreme Court had spoken on the issue four months before the motion was filed.[2] *Burger King* received at least the "average" amount of attention a Supreme Court opinion receives, *i.e.*, it was widely reported by the legal press. It was old enough to have been printed in the advance sheets. Counsel fell below the required standard of reasonable inquiry in not knowing of the existence of *Burger King*.[3]

■ That determination, however, does not end the inquiry. Rule 11 requires "causation," *i.e.*, that the failure to make reasonable inquiry result in the filing of a frivolous motion. There is no such nexus here. *Burger King* is, at most, an incremental or marginal extension of the "purposeful availment" test already recognized in the Ninth Circuit. *See, e.g., Cubbage v. Merchent*, 744 F.2d 665, 668–70 (9th Cir. 1984), *cert. denied,* — U.S. —, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). Thus, although the failure to cite *Burger King* may have resulted in extra work for plaintiff, it did not, of itself, result in the motion being frivolous. Essentially, the same arguments were available—and were made—

by defendant's reliance on pre-*Burger King* Ninth Circuit authority. Once *Burger King* was cited in opposition to the motion, defendant did a credible job of attempting to distinguish it, *e.g.*, defendant argued that *Burger King* should not be applied to a foreign corporation[4] because one of the factors relied on by the Supreme Court, the ability to seek a change of venue to defendant's home state under 28 U.S.C. § 1404(a), 105 S.Ct. at 2185 & n. 20, is absent in the international context. This is at least a "plausible, good faith argument" to distinguish *Burger King. Zaldivar,* At 832. Thus, sanctions are not warranted for this neglect.

■ 2. *Factual Inquiry.* The second argument made in opposition to the motion to dismiss (in addition to the *Burger King* purposeful availment argument) was that defendant was present in California through one or more "general agents" under well-established Ninth Circuit law. *E.g., Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 422–23 (9th Cir. 1977). None of the facts relevant to this issue is mentioned in the moving papers. I assume that counsel was unaware either of the existence of these facts[5] or of their legal significance.[6]

Reasonable inquiry on the personal jurisdiction issue certainly would include ascertaining from your client all reasonably available facts within the knowledge of the client. Here, the critical facts include: (1) the existence of an affiliated California cor-

---

2. It is somewhat of an irony that although, on the underlying motion, counsel did not discover the existence of a four-month old Supreme Court case, on the request for sanctions he cites *Zaldivar* in his reply brief, although it was only 10 days old at the time.

3. This is so notwithstanding counsel's representation at oral argument that his firm did not have Lexis or Westlaw and did not subscribe to *U.S. Law Week.* These research tools may be helpful in discovering the more obscure or the very recent cases not yet generally reported. Their aid seems unnecessary in researching Supreme Court cases from the prior term.

4. Defendant is a Hong Kong corporation.

5. This assumption is related to the duty of candor issued discussed in Part III.B, *infra.* I make this assumption because it is reasonable in the circumstances, is not contradicted by anything in the record and does not impinge upon counsel's integrity as might a contrary assumption of lack of candor, *i.e.,* of knowing concealment.

6. Although ascertaining the legal significance of a fact or set of facts may not be strictly a factual inquiry, *i.e.,* it may involve a question of law or a mixed question of fact and law, I discuss it here for the sake of convenience. However characterized, the same Rule 11 standard governs.

poration whose directorate interlocked with defendant's and who also was represented by the same law firm; (2) a letter written by the partner of the attorney signing the Rule 11 certificate which states in part that the California corporation is the "U.S. agent" of defendant; (3) a joint advertising or marketing brochure of defendant and its California affiliate which describes defendant as the "Asian headquarters" of the California corporation; (4) the fact that the modification of the contract at issue was negotiated by and signed for defendant by its California affiliate in California; and (5) one of defendant's directors is a resident of California and maintains his principal office here from which he conducts business on behalf of defendant. The resident director, whose deposition was taken by plaintiff, obviously was available for interview by defendant's counsel prior to the motion being filed.

I find that reasonable inquiry would have disclosed at least these facts. Under the *Wells Fargo* general agent test, 556 F.2d at 422–23, I conclude that the filing of a motion to dismiss for lack of personal jurisdiction in light of these facts is "frivolous" as defined in *Zaldivar*, at 831 & n. 7, *i.e.*, it is "without factual foundation."

### B. Duty of Candor.

■ The facts alluded to in Part III.A.2, above, were all within the knowledge of defendant, *i.e.*, the client. Based on the asumption that counsel knew of these facts, plaintiff asks for sanctions based on defense counsel's breach of Rule 11's "candor requirements."[7] The only authority cited in support of the existence of such a "requirement" is Schwarzer, *Sanctions Under the New Federal Rule 11—A Clos-*er Look, 104 F.R.D. 181, 193–95 (1985) ("Schwarzer"). Although such a duty undoubtedly exists under rules of professional conduct, no case is cited in support of the proposition that such a duty is imposed by Rule 11.[8] No mention is made of such a duty under Rule 11 by the Advisory Committee in its Notes. Moreover, the Ninth Circuit appears to have limited the scope of Rule 11 to only "two separate problems," *i.e.*, "first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment."[9] *Zaldivar*, at 830.

The duty of candor appears not to come within the scope of either prong of the rule. While lack of candor may be a problem, violations of the rules of professional conduct are, in the first instance and primarily, a matter for the appropriate disciplinary authority. As observed in *Zaldivar*, "Rule 11 is not a panacea intended to remedy all manner of attorney misconduct occurring before or during the trial of civil cases." *Id.*, at 829–30. Given the Ninth Circuit's apparent limitation of the scope of Rule 11, I decline to apply the rule to enforce a duty of candor in the circumstances of this case and to impose sanctions for such an asserted breach.[10]

### C. Persistence in Pursuing A Defective Motion.

■ The final ground asserted by plaintiff in its pursuit of sanctions is that defendant continued to pursue its motion after its "obvious defects" were called to counsel's attention. Again, the only authority cited in support of the sanctions' request is Schwarzer, 104 F.R.D. at 189. There, Judge Schwarzer states that "a be-

---

7. This ground of the request for sanctions is also based on counsel's failure to mention "controlling law," *i.e.*, *Burger King*. However, I accept counsel's representation, as previously set forth, that he did not know of *Burger King* at the time the motion was filed.

8. Judge Schwarzer earlier explicated this theory in *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 103 F.R.D. 124, 127–28 (N.D.Cal.1984).

9. The "improper purpose" prong of Rule 11, *see Zaldivar*, at 830–31, is not at issue here.

10. Imposition of such a candor requirement under Rule 11 also is inconsistent with the rule's objective standard. *Zaldivar*, at 829. Violation of the duty of candor requires that a misstatement be made "knowingly" or with some other equally culpable state of mind. *See Schwarzer*, 104 F.R.D. at 193 & n. 46; *Golden Eagle Distrib. Corp.*, 103 F.R.D. at 127–28.

lief reasonable when a paper is filed may become unreasonable in light of subsequent developments ... To persist ... beyond a point where they could no longer be considered to be well-grounded in fact may violate the rule." *Id.* (citation omitted).[11] However, the rule appears to focus upon the *filing* of papers and the certification is made as of that time. The rule speaks of a paper being "signed in violation of this rule." Thus, subsequent developments would not seem to work a violation of the rule by retroactive invalidation of the signing attorney's certificate. *Zaldivar* appears to endorse this view. At 830 (Rule 11 applies to the *filing* of papers). *Zaldivar* also indicates that Rule 11 "does not repeal or modify existing authority...." *Id.* At 830. One such existing authority cited is 28 U.S.C. § 1927, pertaining to the unreasonable multiplication of proceedings. From all of this, I conclude that in this Circuit, Rule 11 does not apply to the situation of unreasonable persistence in pursuit of a motion after its frivolity has been demonstrated at a point subsequent to its initial filing and, thus, subsequent to counsel's certification under the rule. *Zaldivar* clearly indicates as much; if the circumstance gives rise to any violation, it must be of § 1927's prohibition against counsel "who so multiplies the proceedings in any case unreasonably and vexatiously...." *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757–63, 764–67, 100 S.Ct. 2455, 2459–62, 2463–65, 65 L.Ed.2d 488 (1980). Rule 11 does not address this situation; thus, sanctions are unwarranted for this asserted violation of the rule.[12]

### D. The Appropriate Sanction.

■ Rule 11 mandates that when a violation of the rule is found, sanctions *shall* be imposed, *i.e.*, imposition of sanctions is virtually mandatory. Advisory Committee Notes; *Zaldivar*, at 831 (if violation is found, "sanctions *shall* be assessed" [emphasis added]). As in any case where sanctions are appropriate, however, the appropriate sanction is left to the sound discretion of the court. *See* Advisory Committee Notes (court "retains the necessary flexibility to deal appropriately with violations of the rule," and "has discretion to tailor sanctions to the particular facts of the case").

Here, the found violation of Rule 11 is the failure to make reasonable factual inquiry on the "general agent" issue. That issue was one of the two issues presented by the motion. As indicated, defendant's position on the remaining issue was non-frivolous. However, if adequate factual inquiry had been made on the general agent issue, the motion should not have been made and the legal expense of defending against the motion would not have been incurred. Plaintiff claims a total of $25,627.25 in attorneys' fees and costs in defending against the motion. This consists of a total of 180.45 hours of attorney time, claimed at rates of $210, $125 and $90 per hour, for the three attorneys involved. The reasonableness of the claimed rates and hours is contested.

The Court is inclined to agree with defendant that the claimed expenses are somewhat excessive in terms of a Rule 11 award of reasonable expenses. Even so, if this criterion were to be the only basis of the amount of sanctions, at most a reduction no greater than 25 percent would be warranted, *i.e.*, $19,220.44, or 75 percent of the claimed amount, certainly would be a conservative calculation of expenses reasonably incurred by plaintiff. However, we need not engage in the niceties of a reasonable fee calculation, *e.g.*, *Kerr v.*

---

**11.** The case cited, *Nemeroff v. Abelson*, 620 F.2d 339, 350–51 (2d Cir.1980), does not squarely support this proposition. *Nemeroff* holds that the intentionally dilatory conduct of litigation in bad faith, even though the action was commenced in good faith, violates 28 U.S.C. § 1927. *Id.* It also holds that a finding of bad faith is required before sanctions can be imposed. *Id.* at 351. Such proof of a culpable state of mind is inconsistent with Rule 11. *See* footnote 10, *supra.* The requirement of finding bad faith is also contrary to *Zaldivar,* at 829.

**12.** Plaintiff has not moved for sanctions under § 1927. I decline to explore the issue *sua sponte.*

*Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), because other factors call for a reduction in the amount of monetary sanctions substantially below that amount.

 In accordance with Rule 11's grant of broad discretion to the trial court in fashioning "an appropriate sanction," courts have considered a number of factors in awarding as sanctions less than incurred expenses, *see, e.g., Filippini v. Austin,* 106 F.R.D. 425, 432–34 (C.D.Cal.1985), or no sanctions at all. *See, e.g., Baranski v. Serhant,* 106 F.R.D. 247, 250 (N.D.Ill.1985). In this case, I agree that an amount substantially less than "actual fees" is "fair and reasonable based upon the particular circumstances of the case." *United Food & Commercial Workers Union Local No. 115 v. Armour and Co.,* 106 F.R.D. 345, 349 (N.D.Cal.1985) (citation omitted). Although, as previously stated, it is my view that subjective state of mind is not a factor to be considered in determining whether a violation of Rule 11 has occurred, I agree that the "egregiousness of the conduct involved," is a factor to be considered in determining an appropriate sanction. *Kendrick v. Zanides,* 609 F.Supp. 1162, 1173 (N.D.Cal.1985). Here, I conclude that violation of the rule was due to neglect, that although counsel did a credible and workmanlike job as far as he went in his inquiry into the facts and the law (except for the omission of *Burger King* ), after developing the facts with respect to defendant's principal office being located in Hong Kong, he neglected to inquire further into the facts and to analyze them under *Wells Fargo.* In a sense, it is akin to a plaintiff failing to anticipate a defense (*e.g.,* the statute of limitations) which may or may not be asserted. For these reasons, I conclude that it would be inappropriate to charge defendant with the full costs reasonably incurred by plaintiff.[13] I find under the circumstances of this case that the sum of $5,000.00 is "an appropriate sanction" to be imposed under Rule 11.

 Rule 11 expressly provides that the appropriate sanction may be imposed on the attorney, the represented party or both. As noted by the Advisory Committee, this discretion is granted to the court because, "Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." Here, the facts which disclosed that the motion was frivolous were within the knowledge of the client. I observe also that the client, through its California director whose deposition was taken, was less than candid in his deposition—indeed, at times during his deposition, he appears to have been engaged in a deliberate effort of disinformation. For these reasons, I deem it appropriate to impose sanctions jointly on attorney and client.

### IV. ORDER

For the reasons stated herein,

IT IS ORDERED that George Baltaxe, Esq., the law firm of Baltaxe, Rutkin & Levin and Group Systems International Far East, Ltd., jointly and severally, shall pay to plaintiff Continental Air Lines, Inc., as a sanction under F.R.Civ.P. 11, the sum of $5,000.00, as partial reimbursement of plaintiff's attorneys' fees and expenses in defending against defendant's motion to dismiss. This award of sanctions shall be subject to execution as a final judgment.

---

13. The October 25, 1985 letter from plaintiff's counsel informing defendant's counsel that plaintiff would seek Rule 11 sanctions, although it discussed the *Burger King* purposeful availment issue, did not discuss the general agent issue.