USCA1 Opinion

 

 [Systems note: Appendix available from Clerk's Office.] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____________________ No. 92-2030 ROBERTO NAVARRO-AYALA, ET AL., Plaintiffs, Appellees, v. RAFAEL HERNANDEZ-COLON, GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Boudin, Circuit Judges. ______________ ____________________ Carlos A. Del Valle Cruz with whom Ramirez & Ramirez, Jorge E. _________________________ __________________ _________ Perez Diaz, Secretary of Justice, Commonwealth of Puerto Rico, and __________ Anabelle Rodriguez, Solicitor General, Commonwealth of Puerto Rico, ___________________ were on brief for appellants. Carlos Garcia Gutierrez with whom Armando Cardona Acaba, Puerto ________________________ _____________________ ______ Rico Legal Services, Inc., and Luis M. Villaronga were on brief for _________________________ ___________________ appellees. ____________________ August 20, 1993 ____________________ BREYER, Chief Judge. Kenneth Colon, an attorney, ___________ appeals a $500 sanction that the district court imposed after finding that he had violated Rule 11 of the Federal Rules of Civil Procedure. The district court based the sanction upon a motion that Colon signed, on behalf of the Commonwealth of Puerto Rico, which asked the court to reduce the compensation paid to a special master. After reviewing the motion and the record, we find no violation of Rule 11. We conclude that the sanction is without basis in law, and reverse the order imposing it. I Background __________ The sanction arose in the context of lengthy litigation seeking to reform part of Puerto Rico's mental health system. See, e.g., Navarro-Ayala v. Hernandez-Colon, ___ ____ _____________ _______________ 956 F.2d 348 (1st Cir. 1992). In 1974, a group of patients at Rio Piedras Hospital filed suit, claiming that conditions there violated the federal Constitution. In 1977, the district court entered a Stipulation, agreed upon by the parties, which prescribes reforms and sets standards for care and treatment. In 1985, the district court appointed a Special Master who, assisted by a staff, was to monitor compliance with the Stipulation. In 1987, the district court began to interpret the Stipulation as applying to other hospitals in Puerto Rico (at least insofar as they treated patients transferred from Rio Piedras). The Special Master began to monitor treatment conditions and seek compliance with the Stipulation at, at least, one other hospital. In late 1991, this court held that the Stipulation applied only to conditions at Rio Piedras; in the court's view, the parties had not agreed to its application elsewhere. Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325, _____________ _______________ 1346 (1st Cir. 1991) ("Navarro I"). The court's opinion also _________ observed that Rio Piedras Hospital seemed to be close to achieving full compliance with the Stipulation's conditions. Id. at 1329 n.3. About one month later, in January 1992, ___ the district court reappointed the Special Master, and his monitoring staff, to serve until the end of the year. In February 1992, the Commonwealth filed the motion, signed by attorney Colon, that is the subject of this appeal. The motion asked the district court to reconsider its January 1992 reappointment of the Special Master, to reduce the length of the term of that reappointment, to reduce the level of compensation paid the Master and his staff, and to relieve the Commonwealth of the -3- 3 burden of paying for a year's worth of monitoring services in advance. After considering and rejecting the motion, the district court decided that its signer had violated Rule 11. The district court ordered a sanction of $500. The sanctioned attorney, Kenneth Colon, now appeals. II Review of the Sanction Order ____________________________ Under Rule 11 (in relevant part), an attorney's signature on a motion paper certifies that "to the best of the signer's knowledge, information and belief formed after reasonable inquiry, [the motion] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . ." Fed. R. Civ. P. 11. The district court concluded that the signer of the motion paper before us failed in his duty to undertake reasonable inquiry. In reviewing that holding, we must take account of that court's greater familiarity with relevant context, and "apply an abuse-of- discretion standard." Cooter & Gell v. Hartmarx Corp., 496 _____________ ______________ U.S. 384, 399 (1990). See also Muthig v. Brant Point _________ ______ ____________ Nantucket, Inc., 838 F.2d 600, 603 (1st Cir. 1988). ________________ Applying that standard, we have found no lawful basis for applying a sanction in this case. -4- 4 The reader can most easily understand why we reach this conclusion by examining attorney Colon's motion paper, attached to this opinion as an Appendix. Just what is it about this paper, one might rightly ask, that would violate Rule 11? The document makes three requests. First, the motion asks the district court to reappoint the Special Master to a term shorter than an additional (nearly) full year. It relies on the fact that our then-recent Navarro I _________ opinion both 1) limited the Stipulation's scope to conditions at Rio Piedras Hospital, and 2) referred to Rio Piedras' conditions as close to compliance. In light of those reasons, the motion asserts that the Master's duties under the Stipulation may be less extensive in the coming year than the district court had previously thought. And, it claims that the parties' briefs discussing the implications of Navarro I (scheduled for submission in mid- _________ March) would clarify the more limited scope of those future duties. Second, the motion asks the district court not to require the Commonwealth to "prepay[]" a year's worth of monitoring services, for such payment would be "premature" given that "the need for and extent of these services has not been defined." It adds that there "is no reason why the -5- 5 required monitoring services cannot be compensated after ________ their performance . . . ." As authority, it cites Rule 53(a) of the Federal Rules of Civil Procedure, which gives federal courts broad authority to structure a special master's compensation. See Fed. R. Civ. P. 53(a) ___ (compensation shall be paid "as the court may direct"). Third, the motion opposes the rates of compensation for the Special Master and staff set forth in the court-approved budget. The motion, in an Appendix A, presents a chart which says, in effect, that the Commonwealth compensates its judges, inferior judicial officers, and comparable health care personnel at much lower rates of pay. And the motion, in referring to Rule 53(a), makes clear that the district court has wide discretion to set the proper amount of compensation. See Fed. R. Civ. P. ___ 53(a) (compensation "shall be fixed by the court"). The district court based its Rule 11 finding primarily upon the motion's third request, seeking a reduction in compensation. The January 1992 order reappointing the Special Master provided for compensation at the following hourly rates: Special Master $100.00 Special Master's assistant 30.00 -6- 6 Psychiatrist 75.00 Psychologist 75.00 Social worker 60.00 Occupational therapist 25.00 Quality assurance director 25.00 The appellant's motion in opposition set forth (in its Appendix A) a different and much lower set of hourly rates at which, it said, the Commonwealth paid comparable employees: Superior Court judge $27.00 Superior Court law clerk 10.00 Psychiatrist 11.20 Psychologist 11.20 Social worker 9.80 Occupational therapist 7.90 Quality assurance director 7.90 The district court took objection to this latter schedule. The court said that this schedule did not reflect the pay ___ that many health care professionals in the Commonwealth's employ actually receive. The court said further that Colon had failed to make a reasonable prefiling inquiry into the ____________________________ actual pay of such professionals before suggesting Appendix A's pay scales, which were "drastically below the staff's current rates." These suggested pay scales, the court added, were "insulting to the professionals on the Special Master's staff." In our view, the record does not support the district court's conclusion that Rule 11 required attorney -7- 7 Colon to make a further inquiry. For one thing, the object of Rule 11's inquiry requirement is to avoid filings that are baseless. See Fed. R. Civ. P. 11 (signature certifies ___ that "to the best of the signer's knowledge . . . formed after reasonable inquiry, [the motion] is well grounded in _________________________ ________________ fact and is warranted" by law) (emphasis added); Cooter & ____ _____________________ ________ Gell, 496 U.S. at 393 ("the central purpose of Rule 11 is to ____ deter baseless filings"). Here, the inquiry that the district court believed the appellant should have made would not have shown the motion to be baseless (i.e. legally ___ unwarranted, or without adequate factual grounding). It would simply have weakened, without destroying, the ________ Commonwealth's argument. More specifically, the inquiry would have shown 1) that the motion's Appendix A accurately reflects an official Commonwealth pay scale, set by its central personnel agency, for permanent health care professionals, but 2) that the _________ Commonwealth hires many (perhaps most) health care professionals, not as permanent employees, but under special contractual arrangements at higher rates. In light of that showing, the Commonwealth might have found it more difficult, but not at all impossible, to proceed with its claim for lower compensation on the basis of Appendix A. -8- 8 The legal standards governing special master compensation leave much to the district court's discretion. Fed. R. Civ. P. 53(a). And, an effort to tie the Special Master and staffs' compensation more directly to judicial compensation and to an "official" (though frequently skirted) Commonwealth pay scale is plausible, and within the realm of reasonable argument, even if that argument eventually would not carry the day. Cf. Newton v. Consolidated Gas Co., 259 ___ ______ ____________________ U.S. 101, 105 (1922) (special master's compensation should be "liberal, but not exorbitant"; salaries "for judicial officers performing similar duties are valuable guides," but a "higher rate of compensation is generally necessary"). For another thing, the motion paper's failure to set forth a more complete account of Commonwealth pay practices did not impose significant additional costs upon the opposing party. See, e.g., Unioil, Inc. v. E.F. Hutton & ___ ____ ____________ _____________ Co., 809 F.2d 548, 557 (9th Cir. 1986) (cost of foreseeable ___ response by opposing parties relevant for determining what constitutes reasonable inquiry), cert. denied, 484 U.S. 822 ____________ (1987); Jerold S. Solovy et al., Sanctions in Federal ______________________ Litigation 2.04 at 2-18 (1991) (magnitude of burden in __________ responding to filing affects thoroughness of investigation that must be performed). That party, the Special Master, -9- 9 and the Master's staff, all had ready access to the relevant compensation-related facts and quickly brought them to the court's attention. Of course, presenting these facts did cost the opposing party some time and effort. But Rule 11 normally does not require one party to uncover and to set forth the facts that support the other side's position. Cf. ___ Continental Air Lines, Inc. v. Group Systems International ____________________________ ___________________________ Far East, Ltd., 109 F.R.D. 594, 598 (C.D. Cal. 1986) (Rule ______________ 11 does not impose general duty to call all important facts to court's attention). Finally, the motion, read fairly and as a whole, contains no significant false statement that significantly harmed the other side. We emphasize the word "significant" because the district court found one sentence literally false. That sentence says that the "rates of pay" for the Master's staff "outpace by a factor of 6 or more to 1, the rates of pay of their counterparts in the Public Health System." This statement is not literally false, if one uses the "official" pay scale for permanent employees as a comparison; in light of actual pay practices, we would characterize it as "overstatement" or "one-sided characterization." But were it literally inaccurate, it would not matter, for Rule 11 neither penalizes -10- 10 overstatement nor authorizes an overly literal reading of each factual statement. Forrest Creek Assoc., Ltd. v. ____________________________ McLean Sav. and Loan Ass'n, 831 F.2d 1238, 1244-45 (4th Cir. __________________________ 1987) (Rule 11 "does not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains `well grounded in fact.'"); Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse 9(D) at _________________________________________________ 133-34 (1989) ("The focus of . . . Rule [11] is the court paper as a whole, not individual phrases or sentences construed separately or taken out of context. . . . [A]t some level of analysis, every unsuccessful litigation paper contains an unsupported allegation or flawed argument"). The district court provided several other justifications for its sanctions. It said that Colon, in the motion paper, (1) should not have used the word "bilking," (2) should not have called the payments "burdensome" without first investigating the actual "effects of these payments on the Department of Health's budget," (3) should not have said the litigation was in the "final stage of proceedings" without asking government officials "if full compliance and an end to this case were in fact close at hand," and (4) should not have asked to change the budgeting -11- 11 process without first finding out "how the Special Master had been paid in the past." In our view, these circumstances do not justify a Rule 11 sanction, whether considered separately or all together. (1) We concede that the word "bilking" is pejorative and, insofar as it implies cheating, without justification. We also concede the obvious point that argument made to a judge is more appropriate (and usually works better) without pejoratives. But to find support for a Rule 11 sanction in appellant's use of a single, rather mild (albeit unjustified) pejorative, is to impose a standard of perfection that few lawyers or judges would meet. We are not aware of any reason or authority suggesting that Rule 11 imposes such a standard. (2) The motion paper does call the Special Master's budget "burdensome," but we do not understand where, or how, Rule 11 forbids such a characterization. No one disputes that the total amount of the Special Master's court-approved budget is $171,000. Nothing in the record suggests that the Commonwealth found this amount insignificant; nor do we understand either how further consultation with government officials would have led attorney Colon to change the characterization, or how the -12- 12 use of the word "burdensome" made a significant difference to the litigation. (3) Neither do we understand how, or why, Rule 11 would forbid attorney Colon to characterize the litigation as in the "final stage of proceeding." Our opinion in Navarro I curtailed the scope of the Stipulation and also _________ observed that "conditions" at Rio Piedras may be "largely . . . in compliance." The motion paper made clear that the Commonwealth would soon file a brief arguing in favor of significantly limiting the Special Master's monitoring activity. Thus the statement seems to amount to an argument, reasonable in its context, that might, or might not, help convince a court. The record does not make clear how further "inquiry" or further consultation with government officials would have shown the argument to have lacked adequate "ground[ing] in fact." (4) We agree with the district court that the motion paper, in requesting that "monitoring services be compensated after their performance," does not take account of the fact that the current budgeting system provided for disbursement of budget funds (on a monthly basis) to the Special Master only after he performed services. _____ Nonetheless, we do not see how the motion's possible -13- 13 misstatement can justify a sanction. Read fairly, and in context, the paper's request indicates that the Commonwealth objected to having to budget for a year's worth of monitoring services in advance, a portion of which might ___________ turn out to have been unnecessary. At worst, the paper's statement reflects a minor, technical confusion about the budgeting process, and one which apparently caused no harm. (After all, the opposing party, the Special Master, and the court, all understood, and could readily explain, how current budgeting worked.) See Forrest Creek Associates, ___ __________________________ Ltd., 831 F.2d at 1244-45; Joseph, Sanctions 9(D) at 133- ____ _________ 34. In sum, the district court, at most, could have found a few isolated instances of noncritical statements that further inquiry might have shown to be inaccurate or overstated. That further inquiry would not have shown the motion's requests to have been baseless. And, failure to make that inquiry did not unfairly impose upon the other party some special litigation cost or burden. This case differs significantly from the kinds of cases in which this court has upheld a district court's imposition of Rule 11 sanctions. Cf. Muthig, 838 F.2d at 605 (no reasonable ___ ______ -14- 14 inquiry where counsel could have readily learned from clients facts that would have shown their claim for intentional infliction of emotional distress lacked validity); Ryan v. Clemente, 901 F.2d 177, 179-81 (1st Cir. ____ ________ 1990) (sanctioning harmful allegation that state officials failed to investigate illegal scheme where available record showed the contrary); Cruz v. Savage, 896 F.2d 626, 632-34 ____ ______ (1st Cir. 1990) (sanctioning attorney for unreasonably bringing and pursuing nine frivolous claims, including some with either no supporting evidence or where record directly contradicted claim); Bay State Towing Co. v. Barge American _____________________ ______________ 21, 899 F.2d 129, 131 (1st Cir. 1990) (no reasonable inquiry __ where extensive record contains nothing to suggest why or how a person could have believed most of filing's claims).We do not see how the district court could find a failure to undertake the "reasonable inquiry" that Rule 11 requires. The order of the district court is Reversed. ________ NOTE: See Slip Opinion for copy of Appendix. -15- 15